**Lance R. IRVIN, Appellant,**

v.

**Gary KEMPKER, MDOC, and, Denis Agniel, Chairman, MBPP, Respondents.**

**No. WD 62836.**

Missouri Court of Appeals, Western District.

Oct. 26, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 21, 2004.

Application for Transfer Denied Jan. 25, 2005.

Daniel Hunt, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Andrew W. Hassell, Office of Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Lance Irvin appeals the trial court's judgment denying his writ of mandamus seeking an order that the Department of Corrections and the Board of Probation and Parole not consider his 120–day shock incarceration as a "prior commitment" for the purpose of calculating his "minimum prison term" under Section 558.019, RSMo.[1] We find that the passage of Section 559.115.7 (Laws 2003) requires that the Department not count Irvin's prior 120–day incarceration as a "previous prison commitment" for the purposes of Section 558.019. The judgment is reversed and remanded for further proceedings.

### Facts and Procedural Background

In November 1999, Irvin pleaded guilty to the offense of driving while intoxicated and was sentenced to four years' imprisonment. Execution of that sentence was suspended, however, and he was placed on probation. Irvin's probation was revoked in February 2000, and he was placed in Missouri Department of Corrections custody under the "120–day callback" provisions of Section 559.115, RSMo 1998. The trial

---

1. The denial of the writ of mandamus is an appealable order, given that the trial court entered a preliminary order and the court proceeded to trial before ultimately denying the writ. *See State ex rel. Lohman v. Personnel Advisory Bd.,* 948 S.W.2d 701, 703 (Mo. App.1997).

court subsequently released Irvin back on probation.

Irvin pled guilty to a second driving while intoxicated offense in November 2002. He was sentenced to four years' imprisonment on that charge, to be served concurrently with his prior charge. His probation on the first offense was also revoked at that time, and Irvin's prior sentence was ordered executed.

The Department of Corrections made the determination that Irvin would need to serve forty percent of his sentences before he would become eligible for parole. In making that determination, the Department considered his February 2000 placement in the Department's custody as a "commitment" for calculation of parole eligibility under Section 558.019, RSMo 2000.[2]

Irvin sought a writ of mandamus in the trial court requesting that the court order the Department of Corrections and the Board of Probation and Parole to not consider his shock incarceration in 2000 as a "commitment" in calculating his parole eligibility.

The matter proceeded to trial on stipulated facts. The trial court denied Irvin's request for mandamus relief, and the present appeal follows.

### *Discussion*

In his sole point on appeal Irvin contends that the trial court erroneously interpreted the law in reaching its judgment that Irvin's prior commitment to the Missouri Department of Corrections and subsequent release on probation pursuant to Section 559.115, RSMo, constitutes a "prior commitment" for the purpose of calculating the minimum amount of time he would need to serve upon his sentence before becoming eligible for parole. Re-

spondents Kempker and Agniel (hereinafter referred to as "the State"), in reply, argue that the trial court correctly construed the statute in concluding that Irvin's prior 120–day commitment could be utilized in calculating his parole eligibility under Section 558.019, RSMo.

■ Our standard of review is essentially that of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). We may reverse only if the trial court's judgment is not supported by substantial evidence, is against the weight of the evidence, or incorrectly declares or applies the law. *Wheat v. Mo. Bd. of Prob. & Parole,* 932 S.W.2d 835, 838 (Mo.App.1996).

The central question in this case is whether the time Irvin spent in the Department of Corrections' custody for his 120–day callback constitutes a prior "prison commitment" for purposes of calculating parole eligibility under Section 558.019, RSMo. These issues turn upon interpretation of the language of both Section 558.019, RSMo, as well as Section 559.115, RSMo.

In interpreting a statute, we first look to its plain language to ascertain its meaning. *See State v. Knapp,* 843 S.W.2d 345, 347 (Mo. banc 1992). If we find that the plain language of a criminal statute is ambiguous, we generally construe the statute in the manner most favorable to the defendant. *See id.* However, that rule of construction does not require us to ignore common sense or the statute's evident purpose. *Id.*

Following the entry of the trial court's judgment, and while this matter was pending on appeal, parts of Section 559.115 were amended and new subsections including subsection 7 were enacted as part of SB 5. Section 559.115 generally addresses

---

**2.** All further statutory references are to RSMo 2000, unless otherwise indicated.

the trial court's authority to place a convicted offender temporarily in the custody of the Department of Corrections pursuant to a "120–day callback" program. Upon successful completion of such a program, the trial court may release the offender from prison and place him or her on probation. *See* § 559.115.3, RSMo 2003. A new subsection 7 makes an express statement that such temporary placements "shall not be considered a previous prison commitment for the purpose of determining a minimum prison term under the provisions of section 558.019, RSMo." § 559.115.7, RSMo 2003. If subsection 7 applies to Irvin, the State does not contest that it has miscalculated his "minimum prison term."

The same 2003 legislation also amended other statutes within Chapters 558 and 559, RSMo, some of which widened the availability of early release for certain nonviolent offenders. As such, the issue soon arose whether those amendments applied to individuals who committed crimes or who were sentenced prior to the date the amendments became effective.

The Missouri Supreme Court addressed this question with regard to amendments to Section 558.016, RSMo, in *State ex rel. Nixon v. Russell*, 129 S.W.3d 867 (Mo. banc 2004). The amendments to that statute provided that an individual convicted of a nonviolent class C or D felony, with no prior prison commitments, could seek early release on probation, parole, or other alternative sentence by petitioning the sentencing court after serving 120 days of his or her sentence. *See* § 558.016.8, RSMo 2003. The Supreme Court held that a criminal statute may be applied to a person already convicted or in prison unless the statute: (a) reduces or increases the offender's sentence, or (b) alters the law creating the offense pursuant to which the offender was convicted. *See id.* at 870.

The Court reasoned that the trial court's grant of parole pursuant to the amended version of the statute would not reduce the actual sentence imposed, but would merely alter the location where or the circumstances under which that sentence would be served. *Id.* at 870–71. As such, the amendments to Section 558.016, did not increase or decrease the length of an offender's sentence and could, therefore, be applied to offenders sentenced prior to the enactment of the 2003 amendments. *See id.* at 871.

Neither party, in the original briefs filed in this appeal, addressed either the 2003 amendments or whether they applied in this case. In light of *Russell*, we requested supplemental briefing by the parties regarding the effect, if any, of *Russell* and the 2003 amendments, with regard to the issues before the court in this matter.

In his supplemental brief, Irvin argues that *Russell* stands for the proposition that "retroactively" applying amendments to a criminal statute is appropriate where the amendment does not alter the law creating the offense or increase or decrease the inmate's sentence. Irvin contends that the amendments to Section 559.115.7, RSMo, do nothing to change the law creating any criminal offense and do not increase or decrease an inmate's sentence. All the amendment does is clarify whether the prior placement of an offender within a 120–day callback program and subsequent release on probation constitutes a "prison commitment" for purposes of calculating an offender's minimum prison term. As such, Irvin argues that we should follow *Russell* and hold that subsection 7 of section 559.115, RSMo, should be applied to him. Under that reasoning, his prior time in the Department of Corrections in 2000 would not constitute a "prior commitment," and, consequently, the minimum

prison term provisions of Section 558.019 are not applicable to him.

The State argues that *Russell* is distinguishable in circumstances where the statute specifically provides that it is only applicable after a certain date. We note, however, that Section 559.115 contains no such provision. Instead, the State relies upon language within Section 558.019.9, RSMo, which states "[t]he provisions of this section shall apply only to offenses occurring on or after August 28, 2003." The State contends that this language should be read *in pari materia* with Section 559.115.7, RSMo, in that both provisions were enacted by the same legislation and touched upon the same subject matter. In their view, the exclusion of placements into 120–day callback programs would be excluded from the definition of "prior commitment" only for those offenders whose offenses were committed after August 28, 2003.

The State's argument, however, requires us to ignore the plain language of Section 558.019.9, RSMo 2003. The exclusion of 120–day callback placements is contained within another statute and is not contained within section 558.019. Section 558.019.9, by its terms, expressly affects only "this section," (*i.e.*, the statute in which it is contained). That subsection, then, does not refer or extend to any other statute. The purpose of Section 558.019.9, RSMo 2003, is merely to determine which version of section 558.019, RSMo, is applicable to a particular offender. It does not control the applicability of Section 559.115.7, RSMo 2003.

Finally, we consider whether application of Section 559.115.7 to Irvin after he has been sentenced violates section 1.160, RSMo, relating to retroactive applications of repeals and amendments of substantive laws governing criminal offenses. The Supreme Court addressed this very issue in *Russell* saying "Section 558.016.8 is a new statutory provision; it does not repeal or amend any previously existing statute." 129 S.W.3d at 870 (citing *State ex rel. Nixon v. Kelly*, 58 S.W.3d 513, 518 (Mo. banc 2001)). Additionally, as in *Russell*, Section 559.115.7 does not shorten Irvin's sentence or alter the law creating the offense. In *Russell*, the Court cited approvingly to *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133 (Mo. banc 1995). There, the prisoner argued that he should be subject to the same statutory provisions for probation that existed at the time of his sentence. *See id.* at 134. This argument was rejected, again, for the reason that it did not increase the length of his sentence. *See id.* at 136.

█ Finding the State's argument unpersuasive, we agree with Irvin that *Russell* counsels us to apply the amendments to Section 559.115, RSMo 2003, retroactively. Under those amendments, the time Irvin spent in the custody of the Department of Corrections in the spring of 2000 under a 120–day callback program and prior to his release on probation cannot be considered a "prior commitment" to the Department of Corrections for purpose of calculating his minimum prison term before becoming eligible for parole under Section 558.019, RSMo.[3]

Under that reasoning, it is clear that the State improperly determined Irvin's parole eligibility. The State calculated his parole eligibility upon the incorrect premise that Irvin had one "prior commitment" to the Department of Corrections for purposes of Section 558.019, RSMo, due to his prior placement and successful completion of a 120–day callback program. Under Section

---

**3.** Since Irvin's offense was committed prior to August 28, 2003, his minimum prison term would be calculated under statutory language in effect prior to the 2003 amendments.

559.115.7, RSMo 2003, this was impermissible. Instead, Irvin's parole eligibility should have been determined as if he had no prior prison commitments.

We conclude that the trial court erred in denying Irvin's request for mandamus relief. We, therefore, reverse the judgment below and remand the matter for further proceedings consistent with this opinion.

ROBERT G. ULRICH, Judge, and JAMES M. SMART, JR., Judge, concur.